UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICHOLE GOFFNETT,                    Civil Action No.: 20-11706
                                     Honorable Linda V. Parker
                    Plaintiff,       Magistrate Judge Elizabeth A. Stafford

v.

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 11, 12]

Plaintiff Nichole Goffnett appeals a final decision of defendant Commissioner of Social Security (Commissioner) ending her disability insurance benefits (DIB) under the Social Security Act.  Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B).  After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion, ECF No. 12, be **GRANTED**;

- Goffnett's motion, ECF No. 11, be **DENIED**; and

- the Commissioner's decision be **AFFIRMED** under sentence four

of 42 U.S.C. § 405(g).

## I.     BACKGROUND

### A.     Procedural Background and Goffnett's Disabilities

Born April 19, 1980, Goffnett was 35 years old at the time of her alleged onset date of November 15, 2015.  ECF No. 7-5, PageID.171. Goffnett had past relevant work as a certified nursing assistant, short order cook, line cook, cook helper, and server.  ECF No. 7-2, PageID.45. Goffnett claimed disability from tibia fractures, fibia fractures, pilon fractures, non-weight bearing on the right leg, and swelling.  ECF No. 7-3, PageID.91-92.

After the Commissioner denied her disability application initially, Goffnett requested a hearing, which took place in September 2018 and during which she and a vocational expert (VE) testified.  ECF No. 7-2, PageID.56-89.  In a November 2018 partially favorable written decision, the ALJ found Goffnett disabled due to degenerative joint disease of the right ankle, post-operative for tibia/fibula fractures, and obesity from November 15, 2015 to June 27, 2017.  *Id.*, PageID.38-50.  The ALJ also found that Goffnett had a history of eczema but that the impairment was either controlled by medication or that it did not limit her mental or physical ability to perform work related activities, thus nonsevere.  *Id.*, PageID.42.  The

ALJ also found that because a medical improvement occurred that related to the ability to work, Goffnett's disability ended on June 28, 2017.  *Id.*, PageID.38, 47.  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, Goffnett timely filed for judicial review.  *Id.*, PageID.26-28; ECF No. 1.

## B.    The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant continues to be disabled by analyzing the following sequential steps.  First, for DIB, if the applicant is "doing substantial gainful activity," he or she will be found no longer disabled.  20 C.F.R. § 404.1594(f).  In the second step for DIB, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, disability continues. *Id.*  If the next step is reached, the Commissioner considers whether there has been a medical improvement.  *Id*.  If so, the Commissioner examines

3

whether the medical improvement relates to the claimant's ability to do work.  *Id*.

If the medical improvement does relate to the claimant's ability to do work, the Commissioner must determine whether the claimant's current impairments are severe.  *Id*.  If not, the claimant is not disabled.  *Id*.  If the impairments are severe, the Commissioner assesses the claimant's residual functional capacity (RFC).  *Id.*  A claimant who can do past relevant work based on the RFC is not disabled.  *Id.*  If the claimant cannot do past relevant work, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work.  *Id.*

Applying this framework, the ALJ concluded that Goffnett was no longer disabled.  First, he found that Goffnett had not engaged in substantial gainful activity since the alleged onset date.  ECF No. 7-2, PageID.41.  Second, the ALJ found that Goffnett did not develop any new impairments since June 28, 2017, and that her "severe impairments are the same as that present from November 15, 2015 through June 27, 2017."[1]  *Id.*, PageID.46.  Third, the ALJ found that there was a medical improvement

---

[1] Goffnett's severe impairments included: degenerative joint disease of the right ankle, post-operative for tibia/fibula fractures, and obesity.

as of June 28, 2017. *Id.*, PageID.47.  Fourth, he found that the medical

improvement related to Goffnett's ability to work "because there has been

an increase in the claimant's residual functional capacity."  *Id*.

The ALJ then assessed Goffnett as having an RFC to perform light

work as defined in 20 C.F.R. 404.1567(b) except:

> She can never climb ladders, ropes or scaffolds.  There could
> be no commercial driving.  She could only occasionally crouch
> or kneel.

*Id.*  He concluded that Goffnett could not perform her past relevant work,

but she could do other jobs in significant numbers in the national economy,

including as a general office helper, assembler, and sorter.  *Id.*, PageID.49.

Thus, Goffnett was no longer disabled.  *Id.*, PageID.50.

## II.   ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether

the Commissioner's decision is supported by substantial evidence and

conformed with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*,

741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is not a high

standard; it is "more than a mere scintilla" and requires only "such relevant

evidence as a reasonable mind might accept as adequate to support a

conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal

quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Goffnett argues that the ALJ's finding of medical improvement is not supported by substantial evidence because no improvement occurred "to the point where she is able to perform substantial gainful activity" and that the ALJ's RFC determination is not supported by substantial evidence because it did not include the use of a cane.  ECF No. 11, PageID.828-834. The Court finds Goffnett's arguments unavailing and that the ALJ's decision should be affirmed.

## B.

Goffnett argues that the ALJ's finding contravenes 20 C.F.R. § 404.1594(b) because the "medical improvement is not related to [her] ability to work" as there was "no increase in [her] functional capacity to do basic work activities."  ECF No. 11, PageID.829.  "When the cessation of benefits is at issue, as here, the central question is whether the claimant's medical impairments have improved to the point where she is able to perform substantial gainful activity."  *Kennedy v. Astrue*, 247 F. App'x 761, 764 (6th Cir. 2007) (E.D. Mich. Aug. 9, 2019) (citing 42 U.S.C. § 423(f)(1)).

6

Unlike the initial disability determination, the Commissioner has the burden of proof when terminating benefits.  *Id.* at 765.  The ALJ "must determine if there has been any medical improvement in [the claimant's] impairment(s) and, if so, whether this medical improvement is related to [the claimant's] ability to work."  § 404.1594(a).  A medical improvement is defined as "any decrease in the medical severity of impairment(s) present at the time of the most recent favorable medical decision that [claimant was] disabled or continued to be disabled."  § 404.1594(c)(1).

The ALJ here found that Goffnett's "alleged symptoms and limitations have not been corroborated to the extent alleged by the claimant in the evidence of record and does not justify a finding of disabled after June 27, 2017."  ECF No. 7-2, PageID.48.  He reasoned that Goffnett experienced a medical improvement beginning June 28, 2017, in that she no longer had to elevate her leg horizontally 50% or more of the workday.  *Compare* ECF No. 7-2, PageID.42, *with* ECF No. 7-2, PageID.47.  The ALJ said, "[T]here is *minimal* medical evidence after June 2017, at which time [Goffnett's] orthopedist had released her and physical therapy was discontinued."  *Id.*, PageID.48 (emphasis in original).  The ALJ concluded that Goffnett could perform a significant number of jobs in the national economy.  ECF No. 7-2, PageID.49.

7

To make that decision, the ALJ relied on several medical records from 2017.  *Id.*, PageID.44, 48.  Tarek A. Taha, M.D., a treating physician, wrote in April 2017 that Goffnett was "well appearing and in no acute distress.  Examination of her right ankle show[ed] all of the incisions to be healed" and that there was "good overall ankle alignment."  ECF No. 7-8, PageID.689.  Goffnett had "some numbness over the foot overall" but was "getting better."  *Id.*  She could "dorsiflex and plantar flex the ankle," and Dr. Taha thought that Goffnett was "progressing quite well."  *Id.*

Goffnett sought medical care in May 2017 because of worsening athlete's foot.  ECF No. 7-8, PageID.697.  The examining doctor found her to have normal gait, station, reflexes, and sensation, and instructed her to continue at home physical therapy.  ECF No. 7-8, PageID.699.  Goffnett told another doctor in May 2017 that she had no complaints or problems since her surgery.  *Id.*, PageID.744.  She was "well nourished, well developed and in no acute distress."  *Id.*, PageID.745.  And in late May 2017, Goffnett reported an about "75% overall improvement with her ankle."  ECF No. 7-9, PageID.791.  Her right ankle strength was 4/5 to 4+/5 in all movements.  *Id.*  Goffnett was "able to ambulate outside on uneven surfaces . . . without loss of balance without using her assistive device."  ECF No. 7-8; PageID.791.

On June 27, 2017, the day of cessation of benefits, Dr. Taha said that Goffnett appeared "well" and "in no acute distress," her right ankle showed "good overall alignment," and she could "dorsiflex to neutral and a little past neutral she can plantar flex her ankle." *Id.*, PageID.692. Goffnett had "no instability to varus/valgus stress and good overall alignment," and "good eversion strength overall as well." *Id.* X-rays of the ankle showed that the "nonunion appear[ed] to be healed," and there was "some arthritis" but "overall the alignment of the tibia relative to the ankle [was] pretty good." *Id.* Dr. Taha found that Goffnett was "doing reasonably well given the injury" sustained. *Id.* His plan of care was for her to come back as needed. *Id.*

Other medical reports from early 2017 support the ALJ's finding of medical improvement. In February 2017, Goffnett told a doctor that "she walked a lot this weekend through the grocery store using the cane [and] not the motorized scooter." ECF No. 7-9, PageID.794. The physician noted that Goffnett "was able to ambulate [without] cane" and that she "show[ed] improvement [and] reciprocal pattern on stairs [and] was able to complete this [without] use of cane." *Id.* And although Goffnett reported right ankle pain being 4/10, she said it was from "increased activity over the

9

weekend."  *Id.*, PageID.796, 799.  Goffnett reported that "others have noticed how much better she can go [up] stairs now."  *Id.*, PageID.796.

The Court rejects Goffnett's arguments that the ALJ interpreted raw medical data and "failed to secure a medical opinion regarding [her] RFC as of 6/27/2017."  *See* ECF No. 11, PageID.832-833.  The ALJ's RFC assessment was based on the medical records described above, not on his interpretation of raw medical data, such as diagnostic imaging or test results.  And contrary to Goffnett's assertions, an ALJ's RFC determination can be supported by substantial evidence even without a fully consistent medical opinion.  *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401-02 (6th Cir. 2018).  "No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached."  *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019).  The ALJ made that connection here and Goffnett has failed to show remand is warranted.

Goffnett's argument amounts to an improper invitation for the Court to reweigh the evidence.  "The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because

10

substantial evidence exists in the record to support a different conclusion."
*Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn.
2013).  "If the Secretary's decision is supported by substantial evidence, it
must be affirmed even if the reviewing court would decide the matter
differently, and even if substantial evidence also supports the opposite
conclusion."  *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th
Cir. 1994) (citations omitted).

The ALJ's findings that Goffnett had an increase in her functional
capacity and that there existed work in significant number in the national
economy that she could perform was supported by substantial evidence.

**C.**

Goffnett argues that the "ALJ's failure to find the use of a cane as
necessary in his RFC evaluation is not supported by substantial evidence."
ECF No. 11, PageID.833-834.  The Court disagrees.

The ALJ found that although Goffnett testified that she used a cane to
walk and stand, the "[t]reatment notes indicate she could ambulate outside
on uneven surfaces without loss of balance without her assistive device."
ECF No. 7-2, PageID.47 (citing ECF No. 7-9, PageID.791).  In support of
her claim that she needs a cane, Goffnett cites two medical records stating
that she used a cane.  ECF No. 11, PageID.834, (citing ECF No. 7-8,

PageID.691; ECF No. 7-9, PageID.791).  But neither record said that a

cane was medically necessary for ambulation, and the one she cites from

May 2017 says that she was able to ambulate on uneven surfaces without

using an assistive device.  ECF No. 7-8, PageID.691; ECF No. 7-9,

PageID.791.  The Court finds no error.

### III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the

Commissioner's motion, ECF No. 12, be **GRANTED**; that Goffnett's motion,

ECF No. 11, be **DENIED**; and the ALJ's decision be **AFFIRMED** under

sentence four of 42 U.S.C. § 405(g).


                                        s/Elizabeth A. Stafford_____
                                        ELIZABETH A. STAFFORD
Dated: August 9, 2021                   United States Magistrate Judge


### <u>NOTICE TO THE PARTIES ABOUT OBJECTIONS</u>

Within 14 days of being served with this report and recommendation,

any party may serve and file specific written objections to this Court's

findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72(b)(2).  If a party fails to timely file specific objections, any further appeal

is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*.*  And

only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 9, 2021.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager